FILED
CLERK, U.S. DISTRICT COURT

12/15/2022

CENTRAL DISTRICT OF CALIFORNIA
BY: ___cd___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

March 2022 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>      v.<br><br>ANTHONY DAVID FLORES,<br>  aka "Anton David," and<br>ANNA RENE MOORE,<br><br>      Defendants. | CR  2:22-cr-00593-PA<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1349: Conspiracy to Commit Wire Fraud and Mail Fraud; 18 U.S.C. § 1343: Wire Fraud; 18 U.S.C. § 1341: Mail Fraud; 18 U.S.C. § 1028A: Aggravated Identity Theft; 18 U.S.C. § 1956(h): Conspiracy to Engage in Money Laundering; 18 U.S.C. § 1956(a)(1)(B)(i): Laundering of Monetary Instruments; 18 U.S.C. § 1957(a): Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity; 18 U.S.C. § 2(b): Causing an Act to Be Done; 18 U.S.C. §§ 981(a)(1)(C), 982, and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

INTRODUCTORY ALLEGATIONS AND DEFINITIONS

At all times relevant to this Indictment:

//

//

//

1    Defendants

2       1.   Defendant ANTHONY DAVID FLORES, also known as "Anton David"

3    ("FLORES"), was a resident of Fresno, California and Malibu,

4    California.  Defendant FLORES was a licensed hairdresser and the

5    owner and operator of a window cleaning business in Fresno,

6    California.

7       2.   Defendant ANNA RENE MOORE ("MOORE") was a resident of

8    Fresno, California and Malibu, California.  Defendant MOORE was the

9    owner and operator of a yoga studio in Fresno, California.

10      The Victim

11      3.   The victim (the "Victim") was a resident of Malibu,

12   California, within the Central District of California.  The Victim

13   was a board-certified ophthalmologist and private investor.  The

14   Victim lived alone in a beachfront property (the "Beach House")

15   located off Pacific Coast Highway.  The Victim's only living

16   immediate family members were his elderly mother and sister, both of

17   whom lived in Florida.

18      4.   The Victim gradually lost the ability to care for himself

19   and was involuntarily hospitalized approximately eight times between

20   2015 and 2017.

21      5.   The Victim died at the Beach House on May 27, 2018.

22      The Victim's Financial Accounts

23      6.   The Victim had a brokerage account at Interactive Brokers,

24   with a value in excess of $60 million, and a brokerage account at

25   Fidelity Investments.

26      7.   The Victim also had life insurance policy with Protective

27   Life Insurance, which he had in force since 1994.

28

1      <u>Financial Institutions and Defendants' Financial Accounts</u>

2      8.   J.P. Morgan Chase & Co. ("Chase") was a financial

3  institution whose deposits were insured by the Federal Deposit

4  Insurance Corporation.

5      9.   Defendants FLORES and MOORE opened, maintained, and had

6  access to the following accounts at Chase:

7           a.   An individual Chase checking account ending in 9607 in

8  the Victim's name with defendant FLORES listed as having power of

9  attorney (the "Chase POA checking account ending in 9607");

10          b.   An individual Chase checking account ending in 4782 in

11  the Victim's name with defendant FLORES listed as having power of

12  attorney (the "Chase POA checking account ending in 4782");

13          c.   An individual Chase savings account ending in 0922 in

14  the Victim's name with defendant FLORES listed as having power of

15  attorney (the "Chase POA savings account ending in 0922");

16          d.   An individual Chase checking account ending in 2035 in

17  defendant FLORES's name ("defendant FLORES's personal Chase checking

18  account ending in 2035");

19          e.   A joint Chase saving account ending in 1620 in

20  defendants FLORES's and MOORE's names (the "Joint Chase savings

21  account ending in 1620"); and

22          f.   A joint Chase savings account ending in 6109 in

23  defendants FLORES's and MOORE's names (the "Joint Chase savings

24  account ending in 6109").

25      10.  First Primer Bank ("First Premier") was a financial

26  institution whose deposits were insured by the Federal Deposit

27  Insurance Corporation.

28

11.   Defendants FLORES and MOORE opened, maintained, and had access to six different bank accounts at First Premier.

12.   The Vanguard Group, Inc. ("Vanguard") was a registered investment company.

13.   Defendants FLORES and MOORE opened, maintained, and had access to a joint Vanguard investment account ending in 5065 in both defendants FLORES's and MOORE's names (the "Vanguard investment account ending in 5065").

1                          COUNT ONE

2                     [18 U.S.C. § 1349]

3      The Grand Jury hereby realleges and incorporates by reference

4 paragraphs 1 through 13 of the Introductory Allegations and

5 Definitions of this Indictment as though fully set forth herein.

6 A.    OBJECTS OF THE CONSPIRACY

7      1.    Beginning on an unknown date but no later than

8 June 23, 2017, and continuing to on or about the date of this

9 Indictment, in Los Angeles County, within the Central District of

10 California, and elsewhere, defendants ANTHONY DAVID FLORES, also

11 known as "Anton David" ("FLORES"), and ANNA RENE MOORE ("MOORE")

12 knowingly conspired and agreed with each other to commit wire fraud,

13 in violation of Title 18, United States Code, Section 1343, and mail

14 fraud, in violation of Title 18, United States Code, Section 1341.

15 B.    MANNER AND MEANS OF THE CONSPIRACY

16      2.    The objects of the conspiracy were carried out, and to be

17 carried out, in substance, as follows:

18          a.    Defendants FLORES and MOORE would insert themselves

19 into the Victim's life by using false representations and promises to

20 gain influence over the Victim.

21          b.    Defendants FLORES and MOORE would move into the

22 Victim's Beach House, without paying rent.

23          c.    Defendant FLORES would represent to the Victim's

24 mother that defendants FLORES and MOORE were caring for the Victim

25 and that they had the Victim's best interests in mind.

26          d.    Defendant FLORES would fraudulently procure powers of

27 attorney from the Victim in order to control the Victim's financial

28 accounts.

e.   Defendants FLORES and MOORE would live with the Victim, hold themselves out as the Victim's caretakers and guardians, and make personal, legal, and financial decisions on the Victim's behalf.

f.   Defendants FLORES and MOORE would receive all of the Victim's financial information, including his credit cards, checks, bank statements, accounts, and passwords, which would allow defendants FLORES and MOORE to access the Victim's accounts and funds.

g.   Using the powers of attorney procured from the Victim, defendant FLORES would open multiple bank accounts in the Victim's name, listing defendant FLORES as having power of attorney, which would give defendant FLORES access to those funds.

h.   Defendants FLORES and MOORE would cause the Victim's funds to be deposited into the accounts defendant FLORES opened, from where defendants FLORES and MOORE would divert the Victim's funds for their own personal use.

i.   Defendants FLORES and MOORE would use the Victim's assets to fund their lifestyle, including purchasing various luxury items for their own use, and their separate business ventures.

j.   Defendants FLORES and MOORE would also use the Victim's funds to hire over a dozen assistants and other staff, whom defendants FLORES and MOORE would use to work on their own personal business ventures.

k.   Defendants FLORES and MOORE would facilitate their fraudulent scheme, in part, by isolating the Victim from his family and friends, and preventing mental health workers from conducting welfare checks on the Victim.

1    l.    Defendants FLORES and MOORE would dissuade and
2 distract the Victim from paying attention to their activities by
3 providing the Victim with marijuana, and scheduling hours of massages
4 for the Victim each day.

5    m.    Defendants FLORES and MOORE would also subdue the
6 Victim and prevent him from learning of the extent of their
7 activities by facilitating weekly infusions of ketamine for the
8 Victim.

9    n.    Defendants FLORES and MOORE would also provide the
10 Victim with psilocybin mushrooms and lysergic acid diethylamide
11 ("LSD").

12    o.    Defendants FLORES and MOORE would conceal the Victim's
13 financial information and wealth from his family, including by
14 withholding the Victim's financial information from his family and
15 estate, removing the Victim's files from the Beach House, and
16 resisting efforts from the Victim's estate to recover funds
17 defendants FLORES and MOORE misappropriated.

18    p.    Defendants FLORES and MOORE would cause the filing of
19 false creditor's claims against the Victim's estate through the mail,
20 in which they would claim to be jointly entitled to the Beach House
21 and one-third of the Victim's $60-million estate.

22    3.    Through this fraudulent scheme, defendants FLORES and MOORE
23 would fraudulently transfer at least $3 million to themselves and
24 attempt to fraudulently cause in excess of $20 million to be
25 transferred to themselves.

26 C.    OVERT ACTS

27    4.    On or about the following dates, in furtherance of the
28 conspiracy and to accomplish its objects, defendants FLORES and

7

MOORE, and others known and unknown to the Grand Jury, committed and willfully caused others to commit the following overt acts, among others, in the Central District of California, and elsewhere:

Overt Act No. 1:   On June 23, 2017, defendants FLORES and MOORE met the Victim at an ice cream shop in Venice, California, and shortly thereafter took the Victim's Tesla on a road trip to Northern California.

Overt Act No. 2:   On June 30, 2017, defendant FLORES sent the Victim a text message and offered defendants FLORES's and MOORE's assistance with the Victim's life, stating, "If this helps you in any way, or if there is anything we can do for you, we will be happy to assist you. . . . Our desire is to add ease and flow to your life and be of great service.  Sincerely, your new friends: Anton&Anna."

Overt Act No. 3:   On June 30, 2017, defendants FLORES and MOORE moved into the Victim's Beach House, for free, under the pretenses of being the Victim's caregivers and friends.

Overt Act No. 4:   On July 8, 2017, while the Victim was hospitalized, defendant FLORES sent a text message to the Victim's mother, stating that defendants FLORES and MOORE "have [the Victim's] best interest in mind and want all beings on Planet Earth to be free and happy . . . . [W]e may be the best friends [the Victim] has right now . . . . Have a wonderful evening and remember sometimes our prayers come true."

Overt Act No. 5:   On July 12, 2017, defendants FLORES and MOORE helped the Victim with his release from the hospital.

Overt Act No. 6:   On July 21, 2017, defendant FLORES sent the Victim a text message, stating, "Try and stay out of the hospital.

If you get locked up give me a call and I'll come get you.  Best friends forever.  Sincerely, Anton&Anna."

Overt Act No. 7:   On August 9, 2017, defendant FLORES told the Victim's mother that the Victim had disappeared, and defendant FLORES offered to look for the Victim in exchange for payment.

Overt Act No. 8:   On August 11, 2017, defendant FLORES mailed the Victim's mother a letter and requested reimbursement of $4,687.72 in expenses and time that defendants FLORES and MOORE spent on the Victim, and defendant FLORES told her that defendants FLORES and MOORE would take care of the Victim.

Overt Act No. 9:   On August 12, 2017, defendant FLORES visited the Victim while the Victim was detained at the Twin Towers Correctional Facility.

Overt Act No. 10:   On September 6, 2017, defendant FLORES told the Victim that the Victim's mother was attempting to get a power of attorney and conservatorship over the Victim to take control of the Victim's assets, adding that defendant FLORES was trying to stop her.

Overt Act No. 11:   On September 8, 2017, defendant FLORES raised the idea of a "very limited" power of attorney with the Victim so that defendant FLORES could manage the Victim's affairs and post bail for the Victim, adding that defendant FLORES would "get rid" of the power of attorney "as soon as" the Victim was released from custody.

Overt Act No. 12:   On September 8, 2017, defendant FLORES told the Victim that he loved him and that he had no interest in the Victim's money.

Overt Act No. 13:   On September 9, 2017, defendant FLORES fraudulently induced the Victim to sign a power of attorney.

9

1       <u>Overt Act No. 14:</u>   On September 10, 2017, defendant FLORES

2   texted an acquaintance, stating, "PS . . . I got [p]ower of attorney

3   for the beach house," and the acquaintance responded, "Boom."

4       <u>Overt Act No. 15:</u>   On September 12, 2017, defendant FLORES

5   fraudulently induced the Victim to sign a second, expanded, power of

6   attorney.

7       <u>Overt Act No. 16:</u>   On September 14, 2017, defendant FLORES

8   provided one of the powers of attorney to Fidelity Investments to

9   access the Victim's Fidelity Investments accounts.

10      <u>Overt Act No. 17:</u>   On September 17, 2017, defendant FLORES

11  posted bail for the Victim, and defendant FLORES arranged to pick up

12  the Victim from the Twin Towers Correctional Facility upon his

13  release.

14      <u>Overt Act No. 18:</u>   On September 20, 2017, in response to a

15  question from the Victim regarding the Victim's laptop, defendant

16  FLORES sent the Victim a text message, stating, "I have your MacBook.

17  . . . I would like to keep the MacBook to process your bill payments,

18  insurance claims and critical mail correspondence for bail and other

19  legal matters.  Of course by your request and permission.  It is my

20  intention to be a valuable Friend and Executive for [the Victim's]

21  Estate."

22      <u>Overt Act No. 19:</u>   On September 23, 2017, defendant FLORES sent

23  a text message to an acquaintance, stating, "Things are going well

24  with my friend/client [the Victim] he continues to share more trust

25  and confidence with me.  I feel like this could possibly be a long

26  term business relationship between us."

27      <u>Overt Act No. 20:</u>   On September 25, 2017, defendant FLORES

28  caused the opening of the Chase POA checking account ending in 9607.

<u>Overt Act No. 21:</u>  On September 25, 2017, defendant FLORES prevented a Los Angeles County Department of Mental Health worker from contacting the Victim for a welfare check.

<u>Overt Act No. 22:</u>  On September 26, 2017, defendant FLORES caused a $100,000 transfer from the Victim's Fidelity account to be deposited into the Chase POA checking account ending in 9607.

<u>Overt Act No. 23:</u>  On September 27, 2017, defendant FLORES opened defendant FLORES's personal Chase checking account ending in 2035.

<u>Overt Act No. 24:</u>  On September 30, 2017, defendant FLORES texted an acquaintance and described his relationship with the Victim, stating, "I am his Power of Attorney and Executive Life Assistant.  My goal is to integrate him into love and light.  He is a potential investor for all of my contacts."

<u>Overt Act No. 25:</u>  On October 2, 2017, defendant FLORES provided a power of attorney document to a ketamine clinic for the Victim's ketamine infusion and listed himself on the Victim's medical forms as having power of attorney for the Victim and as a person to receive the Victim's medical information.

<u>Overt Act No. 26:</u>  On October 4, 6, 10, and 11, 2017, defendants FLORES and MOORE caused the Victim's transportation to a ketamine clinic for ketamine infusions.

<u>Overt Act No. 27:</u>  On October 11, 2017, defendant FLORES called Interactive Brokers to request a new security card and password for the Victim's Interactive Brokers account.

<u>Overt Act No. 28:</u>  On October 12, 2017, defendant FLORES called Protective Life Insurance to request the full cash surrender value of a life insurance policy in the Victim's name worth $446,872.23.

Overt Act No. 29:   On October 13, 2017, defendant FLORES called Interactive Brokers about the Victim's account, identified himself as the Victim's "personal assistant" and "power of attorney," and attempted to initiate a $1-million withdrawal from the Victim's Interactive Brokers account to the Chase POA checking account ending in 9607.

Overt Act No. 30:   On October 13, 2017, defendant FLORES completed a request form for the full cash surrender value of the Victim's Protective Life Insurance policy, and he signed the form as a "disinterested party" witness to the Victim's signature.

Overt Act No. 31:   On October 14, 2017, defendants FLORES and MOORE hired Individual A to be an administrative assistant for defendants FLORES and MOORE and the Victim, whom they referred to as their client.

Overt Act No. 32:   On October 16, 2017, defendant FLORES initiated a $50,000 transfer from the Victim's Interactive Brokers account to the Chase POA checking account ending in 9607.

Overt Act No. 33:   On November 1, 2017, defendant FLORES prevented a Los Angeles County Department of Mental Health worker from contacting the Victim for a welfare check.

Overt Act No. 34:   On November 9, 2017, defendant FLORES caused the opening of Chase POA checking account ending in 4782 and the Chase POA savings account ending in 0922.

Overt Act No. 35:   On November 9, 2017, defendant FLORES withdrew $104,761.89 from the Chase POA checking account ending in 9607 by writing the Victim's name on the withdrawal slip and signing defendant FLORES's signature.

Overt Act No. 36:   On November 14, 2017, defendant FLORES signed a medical consent form for the Victim and represented that he was the "guardian" of the Victim.

Overt Act No. 37:   On November 16, 2017, defendant FLORES caused the deposit of $446,872.23 from the surrender of the Victim's Protective Life Insurance policy to be deposited into the Chase POA checking account ending in 4782.

Overt Act No. 38:   On November 23, 2017, defendant FLORES texted an individual attempting to contact the Victim, stating, "Before [the Victim] takes any meetings or calls I would like to discus [sic] the nature of your business. . . . At this time all meetings are being scheduled and coordinated by my team."

Overt Act No. 39:   On December 4, 2017, defendants FLORES and MOORE caused $1,000 to be transferred from the Chase POA checking account ending in 4782 to defendant MOORE via Zelle.

Overt Act No. 40:   On December 7 and 18, 2017, defendants FLORES and MOORE caused Individual A to be paid $660.01 and $519.59, respectively, from the Chase POA checking account ending in 4782.

Overt Act No. 41:   On December 14, 2017, defendant FLORES told a conservatorship attorney hired by the Victim's mother to pursue a conservatorship for the Victim that defendant FLORES was in "complete control" of the Victim's affairs.

Overt Act No. 42:   On December 21, 2017, defendant FLORES withdrew $10,000 in cash from the Chase POA checking account ending in 4782.

Overt Act No. 43:   On January 14, 2018, defendant FLORES sent a text message to the Victim's mother, stating that defendant FLORES was "always informed on all matters" regarding the Victim.

13

<u>Overt Act No. 44:</u>   On January 20, 2018, defendant FLORES signed medical documents for the Victim and represented that he was the "guardian or conservator of an incompetent person."

<u>Overt Act No. 45:</u>   On February 6, 2018, defendant FLORES wrote a check for $10,215.06 on the Chase POA checking account ending in 4782 to rent office space for defendants FLORES's and MOORE's use.

<u>Overt Act No. 46:</u>   On February 14, 2018, defendants FLORES and MOORE hired Individual B as an administrative assistant for their business.

<u>Overt Act No. 47:</u>   On February 28, 2018, defendants FLORES and MOORE caused the payment of $1,989.86 to Individual B from the Chase POA checking account ending in 4782 via Zelle.

<u>Overt Act No. 48:</u>   On February 28, 2018, defendant FLORES sent an email to the Victim's psychiatrist and represented himself "as [the Victim]'s care taker and friend."

<u>Overt Act No. 49:</u>   On February 28, 2018, defendant FLORES withdrew $10,000 in cash from the Chase POA checking account ending in 4782.

<u>Overt Act No. 50:</u>   On March 8, 2018, defendant FLORES listed himself as having the Victim's durable power of attorney on a patient information sheet for the Victim, and told the Victim's psychologist not to discuss billing or money issues in front of the Victim.

<u>Overt Act No. 51:</u>   On March 14, 2018, defendants FLORES and MOORE caused the payment of $2,150 to Individual B from the Chase POA checking account ending in 4782 via Zelle.

<u>Overt Act No. 52:</u>   On March 15, 2018, defendant FLORES texted the Victim's mother and stated, "I would NOT send [the Victim] messages . . . . [L]et me continue to bridge the gap . . . . [Y]ou

14

are in my thoughts and prayers.  Your messages make [the Victim] feel ashamed and embarrassed.  Please trust me on this.  Your text[s] make things worse. . . .  I have given you clear instructions how to best serve your sons wishes. . . .  [S]ilence is golden.  I will keep you informed.  Please trust that this is best for [the Victim] and rest your worries at gods feet.  [The Victim] is getting better!"

Overt Act No. 53:  On March 30, 2018, defendant FLORES wrote the Victim a letter requesting a $1-million cash infusion to FLORES's "operating account," stating, "I wholeheartedly see the light in you and have chosen to devote my life to be of great service to you, even putting aside my career as an artist and duties as a CEO of my businesses."

Overt Act No. 54:  On April 3, 2018, defendant MOORE texted defendant FLORES, stating, "I require an assistant who is available Monday through Friday from 8am to 5pm, dedicated entirely to my projects, and unavailable to work on any projects other than those assigned by me," and further stated that she was focusing on her "dreams of being a performing artist."

Overt Act No. 55:  On April 5, 2018, defendant FLORES transferred $100,000 from the Chase POA checking account ending in 4782 to defendant FLORES's personal Chase checking account ending in 2035.

Overt Act No. 56:  On May 13, 2018, defendants FLORES and MOORE arranged to consume LSD with the Victim.

Overt Act No. 57:  On May 21, 2018, defendant FLORES told the Victim's psychologist that he was worried that the Victim's mania was returning.

<u>Overt Act No. 58:</u>   On May 23, 2018, defendant FLORES administered LSD to the Victim.

<u>Overt Act No. 59:</u>   On May 23, 2018, defendant FLORES caused the changing of the two-step authentication feature on the Victim's Interactive Brokers account.

<u>Overt Act No. 60:</u>   On May 23, 2018, defendant FLORES initiated a $1-million withdrawal from the Victim's Interactive Brokers account to the Chase POA checking account ending in 4782.

<u>Overt Act No. 61:</u>   On May 23, 2018, defendant FLORES initiated a second $1-million withdrawal from the Victim's Interactive Brokers account to the Chase POA checking account ending in 4782.

<u>Overt Act No. 62:</u>   On May 23, 2018, defendant FLORES directed Individual B to call Interactive Brokers and impersonate the Victim to confirm that defendant FLORES's cell phone number was listed as the contact number on the Victim's account and to check the status of a recently submitted $1-million withdrawal.

<u>Overt Act No. 63:</u>   On May 23, 2018, defendant FLORES caused the transfer of the entire balance of $314,065.20 from the Chase POA savings account ending in 0922 to defendant FLORES's personal Chase checking account ending in 2035.

<u>Overt Act No. 64:</u>   On May 24, 2018, defendants FLORES and MOORE caused the Victim to receive a ketamine infusion without informing the providers about the Victim's recent ingestion of LSD.

<u>Overt Act No. 65:</u>   On May 24, 2018, defendant FLORES caused the transfer of $350,000 and $1,012,114.12 from the Chase POA account ending in 4782 to defendant FLORES's personal Chase checking account ending in 2035.

<u>Overt Act No. 66:</u>   On May 24, 2018, defendant MOORE texted defendant FLORES, stating, "You already told me the plan for when [the Victim] goes manic and evicts us."

<u>Overt Act No. 67:</u>   On May 24, 2018, defendant FLORES responded, "I got a plan" and "that's a good thing."

<u>Overt Act No. 68:</u>   On May 25, 2018, defendants FLORES and MOORE moved out of the Beach House and checked into a nearby hotel after the Victim ordered defendants FLORES and MOORE to leave the Beach House.

<u>Overt Act No. 69:</u>   On May 26, 2018, defendants FLORES and MOORE monitored the Victim's deteriorating mental condition through video cameras installed at the Beach House.

<u>Overt Act No. 70:</u>   On May 27, 2018, defendants FLORES and MOORE continued to watch the Victim's worsening mental condition on the video cameras installed throughout the Beach House and told others not to worry about the Victim.

<u>Overt Act No. 71:</u>   On May 29, 2018, defendant FLORES told Individual A that the Victim died peacefully in his sleep at the Beach House.

<u>Overt Act No. 72:</u>   On May 29, 2018, defendant FLORES attempted to withdraw $500,000 in cash from the Chase POA checking account ending in 4782.

<u>Overt Act No. 73:</u>   On May 29, 2018, defendant FLORES made four withdrawals from the Chase POA checking account ending in 4782 in the amounts of $100,000, $100,000, $20,782, and $80,000.

<u>Overt Act No. 74:</u>   On June 10, 2018, defendants FLORES and MOORE hosted a memorial service for the Victim at the Beach House without inviting the Victim's family or telling them in advance.

17

1    <u>Overt Act No. 75:</u>   On June 11, 2018, defendant FLORES caused

2    the transfer of $700,120.92 from the Chase POA checking account

3    ending in 4782 to defendant FLORES's personal Chase checking account

4    ending in 2035.

5    <u>Overt Act No. 76:</u>   In mid-June 2018, defendants FLORES and

6    MOORE refused to turn over the Victim's financial documents to the

7    Victim's family.

8    <u>Overt Act No. 77:</u>   In mid-June 2018, defendants FLORES and

9    MOORE removed records from the Victim's Beach House.

10   <u>Overt Act No. 78:</u>   On November 16, 2018, defendant FLORES sent

11   a text message to defendant MOORE, stating, "Free and clear Verbal

12   promise House and 1/3 Immediately release hold on our funds

13   Individual thoughts regarding these xyz topics."

14   <u>Overt Act No. 79:</u>   On January 2, 2019, defendants FLORES and

15   MOORE drafted a document that read, "Does it make sense to propose

16   that Flores provided so much value to [the Victim] on a

17   business/social/public relations front . . . that [the Victim] wanted

18   Flores to benefit through receiving 1/3 of [the Victim]'s estate and

19   beach house," and further, "Also can they prove [the Victim] was

20   unaware that FLORES was using the 9301 card to make purchases, as in

21   that [the Victim] was unaware of what purchases were being made and

22   what the balances in his accounts were?"

23   <u>Overt Act No. 80:</u>   On January 16, 2019, defendants FLORES and

24   MOORE filed false creditor's claims against the Victim's estate by

25   causing them to be mailed, in which they claimed that the Victim

26   promised them the Beach House and one-third of his estate.

27   <u>Overt Act No. 81:</u>   On October 17, 2019, defendant FLORES

28   requested that the Victim's estate honor what defendant FLORES

claimed were the Victim's wishes and give defendants FLORES and MOORE the Beach House and one-third of the Victim's estate.

COUNT TWO

[18 U.S.C. §§ 1028A(a)(1), 2(b)]

Between on or about June 23, 2017 and continuing through on or about January 16, 2019 in Los Angeles County, within the Central District of California, and elsewhere, defendants ANTHONY DAVID FLORES, also known as "Anton David" ("FLORES"), and ANNA RENE MOORE knowingly transferred, possessed, and used, without lawful authority, and willfully caused another person to knowingly transfer, possess, and use, without lawful authority, means of identification that defendants FLORES and MOORE knew belonged to another person, during and in relation to the offense of conspiracy to commit wire fraud and mail fraud, a felony violation of Title 18, United States Code, Section 1349, as charged in Count One of this Indictment.

COUNTS THREE AND FOUR

[18 U.S.C. § 1343]

A.   INTRODUCTORY ALLEGATIONS

1.   The Grand Jury hereby realleges and incorporates by reference paragraphs 1 through 13 of the Introductory Allegations and Definitions of this Indictment as though fully set forth herein.

B.   THE SCHEME TO DEFRAUD

2.   Beginning on an unknown date but no later than June 23, 2017, and continuing through on or about the date of this Indictment, in Los Angeles County, within the Central District of California, and elsewhere, defendants ANTHONY DAVID FLORES, also known as "Anton David" ("FLORES"), and ANNA RENE MOORE ("MOORE") knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the Victim as to material matters, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.  The scheme operated, in substance, as set forth in paragraphs 2 through 3 of Count One of this Indictment, which are re-alleged and incorporated herein by reference as if set forth in full.

C.   USE OF WIRES

3.   On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants FLORES and MOORE, for the purpose of executing the above-described scheme to defraud, transmitted and willfully caused the transmission of the following items by means of wire communication in interstate and foreign commerce:

//

| COUNT | DATE | INTERSTATE WIRING |
|-------|------|-------------------|
| THREE | 5/23/2018 | Transfer of approximately $1 million at 8:51 p.m. EDT from the Victim's Interactive Brokers account, by means of interstate wires, to the Chase POA checking account ending in 4782 |
| FOUR | 5/23/2018 | Transfer of approximately $1 million at 9:13 p.m. EDT from the Victim's Interactive Brokers account, by means of interstate wires, to the Chase POA checking account ending in 4782 |

COUNTS FIVE THROUGH EIGHT

[18 U.S.C. § 1341]

A.    INTRODUCTORY ALLEGATIONS

     1.    The Grand Jury hereby realleges and incorporates by reference paragraphs 1 through 13 of the Introductory Allegations and Definitions of this Indictment as though fully set forth herein.

B.    THE SCHEME TO DEFRAUD

     2.    Beginning on a unknown date but no later than on June 23, 2017, and continuing through at least on or about the date of this Indictment, in Los Angeles County, within the Central District of California, and elsewhere, defendants ANTHONY DAVID FLORES, also known as "Anton David" ("FLORES"), and ANNA RENE MOORE ("MOORE") knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud the Victim and his estate as to material matters, and to obtain money and property by means of material false and fraudulent pretenses, representations, and promises, and the concealment of material facts.  The scheme operated, in substance, as set forth in paragraphs 2 through 3 of Count One of this Indictment, which are re-alleged and incorporated herein by reference as if set forth in full.

C.    USE OF THE MAILS

     3.    On or about the following dates, in Los Angeles County, within the Central District of California, and elsewhere, defendants FLORES and MOORE, for the purpose of executing above-described scheme to defraud, placed and willfully caused the following items to be placed in an authorized depository for mail matter, to be sent and delivered by the United States Postal Service, according to the directions thereon:

23

| COUNT | DATE | ITEM MAILED |
|-------|------|-------------|
| FIVE | 1/16/2019 | A creditor claim filed by defendant FLORES against the Victim's estate for one-half the value of the Beach House, representing a value of approximately $1,792,241.50 |
| SIX | 1/16/2019 | A creditor claim filed by defendant MOORE against the Victim's estate for one-half the value of the Beach House, representing a value of approximately $1,792,241.50 |
| SEVEN | 1/16/2019 | A creditor claim filed by defendant FLORES against the Victim's estate for one-sixth of the Victim's estate, representing a value in excess of $10 million |
| EIGHT | 1/16/2019 | A creditor claim filed by defendant MOORE against the Victim's estate for one-sixth of the Victim's estate, representing a value in excess of $10 million |

COUNT NINE

[18 U.S.C. § 1956(h)]

A.    INTRODUCTORY ALLEGATIONS

1.    The Grand Jury hereby realleges and incorporates by reference paragraphs 1 through 13 of the Introductory Allegations and Definitions of this Indictment as though fully set forth herein.

B.    OBJECTS OF THE CONSPIRACY

2.    Beginning on a date unknown to the Grand Jury but no later than May 23, 2018, and continuing through on or about the date of this Indictment, in Los Angeles County, within the Central District of California, and elsewhere, defendants ANTHONY DAVID FLORES, also known as "Anton David" ("FLORES"), and ANNA RENE MOORE ("MOORE") knowingly combined, conspired, and agreed:

a.    to conduct, attempt to conduct, and willfully cause others to conduct and attempt to conduct financial transactions, affecting interstate and foreign commerce, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, which, in fact, involved the proceeds of specified unlawful activity -- namely, conspiracy to commit wire and mail fraud, in violation of Title 18, United States Code, Section 1349, and wire fraud, in violation of Title 18, United States Code, Section 1343 -- and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i); and

b.    to knowingly engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000, affecting interstate and foreign commerce, which was derived

25

from specified unlawful activity -- namely, conspiracy to commit wire and mail fraud, in violation of Title 18, United States Code, Section 1349, and wire fraud, in violation of Title 18, United States Code, Section 1343 -- and knowing the funds represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1957.

C.    MANNER AND MEANS OF THE CONSPIRACY

The objects of the conspiracy were carried out, and to be carried out, in substance, as follows:

a.    Defendants FLORES and MOORE would fraudulently cause the transfer of funds from the Victim's Interactive Brokers account, Fidelity Investments account, and other financial accounts to the Chase POA checking account ending in 4782.

b.    Defendants FLORES and MOORE would open multiple bank accounts in their own names and names of entities that they controlled and then transfer funds from the Chase POA checking account ending in 4782 into those accounts, knowing that the funds transferred were criminally derived.

c.    Defendants FLORES and MOORE would make withdrawals, each more than $10,000, from bank accounts they each controlled individually and jointly, knowing that the funds used were criminally derived.

d.    Defendants FLORES and MOORE would open these multiple bank accounts and make these withdrawals from funds originating from the Victim to conceal their source and prevent the Victim and Victim's estate from recovering those funds.

//

//

D.   <u>OVERT ACTS</u>

3.   On or about the following dates, in furtherance of the conspiracy, and to accomplish its objects, defendants FLORES and MOORE committed and willfully caused others to commit the following overt acts, among others, in the Central District of California, and elsewhere:

<u>Overt Act No. 1:</u>   On May 23, 2018, defendant FLORES caused the transfer of the balance of $314,065.20 from the Chase POA savings account ending in 0922 to defendant FLORES's personal Chase checking account ending in 2035.

<u>Overt Act No. 2:</u>   On May 24, 2018, defendant FLORES caused the transfer of $350,000 and $1,012,114.12 from the Chase POA checking account ending in 4782 to defendant FLORES's personal Chase checking account ending in 2035.

<u>Overt Act No. 3:</u>   On May 29, 2018, defendant FLORES attempted to withdraw $500,000 in cash from the Chase POA checking account ending in 4782.

<u>Overt Act No. 4:</u>   On May 29, 2018, defendant FLORES made four withdrawals from the Chase POA checking account ending in 4782 in the amounts of $100,000, $100,000, $20,782, and $80,000.

<u>Overt Act No. 5:</u>   On June 29, 2018, defendants FLORES and MOORE opened the Joint Chase savings account ending in 1620.

<u>Overt Act No. 6:</u>   On June 30, 2018, defendants FLORES and MOORE caused the transfer of $2 million from defendant FLORES's personal Chase checking account ending in 2035 to the Joint Chase savings account ending in 1620.

<u>Overt Act No. 7:</u>   On July 17, 2018, defendants FLORES and MOORE opened a new joint Chase savings account ending in 6109.

Overt Act No. 8:   On July 18, 2018, defendant FLORES transferred $499,687.86 from defendant FLORES's personal Chase checking account ending in 2035 to the Joint Chase savings account ending in 6109.

Overt Act No. 9:   On September 4, 2018, defendants FLORES and MOORE opened the Vanguard investment account ending in 5065.

Overt Act No. 10:   On September 4, 2018, defendants FLORES and MOORE transferred $2.3 million from the Joint Chase savings account ending in 1620 to the Vanguard investment account ending in 5065.

Overt Act No. 11:   On September 5, 2018, defendant FLORES sent a text message to defendant MOORE, stating, "Chase Withdraw all funds.  Close all accounts except for 1.  3609???  money acccount[sic].  Go to Citi bank Open Anthony Flores personal account. Deposit 50% into Anna Moors Deposit 50% into Anthony Flores new account.  Close all chase Use ADF for all expenses."

Overt Act No. 12:   On September 5, 2018, defendant MOORE sent a text message to defendant FLORES, stating, "I was able to start the vanguard acct and that has been fully funded.  With your name on it."

Overt Act No. 13:   On September 6, 2018, defendant FLORES caused the incorporation of Trident Solutions, a limited liability company in South Dakota.

Overt Act No. 14:   On November 15, 2018, defendant MOORE sent defendant FLORES a text message, stating, "They are giving me trouble at this branch.  They said going bank to bank is a red flag . . . . Stick with Mercedes sprinter as reason.  Stay calm.  Speak slowly. Do not get agitated.  We can always go back tomorrow.  These accts are not frozen."

<u>Overt Act No. 15:</u>   On January 10, 2019, defendants FLORES and MOORE opened six bank accounts at First Premier Bank in South Dakota, depositing $20,000 cash into one of the bank accounts.

<u>Overt Act No. 16:</u>   On January 10, 2019, defendant MOORE told an employee of First Premier Bank that she and defendant FLORES were relocating to South Dakota to be closer to defendant MOORE's grandmother.

1                          COUNTS TEN AND ELEVEN

2               [18 U.S.C. §§ 1956(a)(1)(B)(i), 2(b)]

3     The Grand Jury hereby realleges and incorporates by reference

4 paragraphs 1 through 13 of the Introductory Allegations and

5 Definition of this Indictment as though fully set forth herein.

6     On or about the following dates, in Los Angeles County, within

7 the Central District of California, and elsewhere, defendants ANTHONY

8 DAVID FLORES, also known as "Anton David" ("FLORES"), and ANNA RENE

9 MOORE ("MOORE") knowingly conducted and willfully caused others to

10 conduct the following financial transactions affecting interstate and

11 foreign commerce, knowing that the property involved in the financial

12 transactions represented the proceeds of some form of unlawful

13 activity, which, in fact, involved the proceeds of specified unlawful

14 activity, namely, conspiracy to commit wire and mail fraud, in

15 violation of Title 18, United States Code, Section 1349, and wire

16 fraud, in violation of Title 18, United States Code, Section 1343,

17 and knowing that each transaction was designed in whole and in part

18 to conceal and disguise the nature, location, source, ownership, and

19 control of the proceeds:

| COUNT | DATE | TRANSFER |
|-------|------|----------|
| TEN | 6/30/2019 | Transfer of approximately $2 million from defendant FLORES's personal Chase checking account ending in 2035 to the Joint Chase savings account ending in 1620 |
| ELEVEN | 7/18/2019 | Transfer of approximately $499,687.86 from defendant FLORES's personal Chase checking account ending in 2035 to the Joint Chase savings account ending in 6109 |

COUNT TWELVE

[18 U.S.C. §§ 1957(a)]

The Grand Jury hereby realleges and incorporates by reference paragraphs 1 through 13 of the Introductory Allegations and Definition of this Indictment as though fully set forth herein.

On or about September 4, 2019, in Los Angeles County, within the Central District of California, and elsewhere, defendants ANTHONY DAVID FLORES, also known as "Anton David", and ANNA RENE MOORE knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000 by making a transfer of approximately $2.3 million from the Joint Chase savings account ending in 1620 to the Vanguard investment account ending in 5065, the property involved in the monetary transaction having been derived from specified unlawful activity, namely, conspiracy to commit wire and mail fraud, in violation of Title 18, United States Code, Section 1349, and wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the funds involved in the monetary transaction represented the proceeds of some form of unlawful activity.

1          FORFEITURE ALLEGATION ONE

2      [18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

3      1.    Pursuant to Rule 32.2 of the Federal Rules of Criminal

4  Procedure, notice is hereby given that the United States of America

5  will seek forfeiture as part of any sentence, pursuant to Title 18,

6  United States Code, Section 981(a)(1)(C) and Title 28, United States

7  Code, Section 2461(c), in the event of the defendants' conviction of

8  the offense set forth in either Counts One through Eight of this

9  Indictment.

10      2.    Any defendant so convicted shall forfeit to the United

11  States of America the following:

12          (a)   All right, title, and interest in any and all

13  property, real or personal, constituting, or derived from, any

14  proceeds traceable to the offenses; and

15          (b)   To the extent such property is not available for

16  forfeiture, a sum of money equal to the total value of the property

17  described in subparagraph (a).

18      3.    Pursuant to Title 21, United States Code, Section 853(p),

19  as incorporated by Title 28, United States Code, Section 2461(c), any

20  defendant so convicted shall forfeit substitute property, up to the

21  value of the property described in the preceding paragraph if, as the

22  result of any act or omission of said defendant, the property

23  described in the preceding paragraph or any portion thereof

24  (a) cannot be located upon the exercise of due diligence; (b) has

25  been transferred, sold to, or deposited with a third party; (c) has

26  been placed beyond the jurisdiction of the court; (d) has been

27  substantially diminished in value; or (e) has been commingled with

28  other property that cannot be divided without difficulty.

32

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of any defendant's conviction of the offenses set forth in any of Counts Nine through Twelve of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) Any property, real or personal, involved in such offense, and any property traceable to such property; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), any defendant so convicted shall forfeit substitute property, if, by any act or omission of said defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the

course of the money laundering offense unless the defendant, in committing the offense or offenses giving rise to the forfeiture, conducted three or more separate transactions involving a total of $100,000.00 or more in any twelve-month period.

A TRUE BILL

_____/S/_____
Foreperson

E. MARTIN ESTRADA
United States Attorney

ANNAMARTINE SALICK
Assistant United States Attorney
Chief, National Security Division

CAMERON L. SCHROEDER
Assistant United States Attorney
Chief, Cyber & Intellectual
  Property Crimes Section

KHALDOUN SHOBAKI
Assistant United States Attorney
Deputy Chief, Cyber &
  Intellectual Property Crimes
  Section

ANDREW M. ROACH
Assistant United States Attorneys
Cyber & Intellectual Property
  Crimes Section